UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

NISAR AHMED,

      Petitioner,

     v.

WARDEN, OFFICER-IN-CHARGE,
BUFFALO FEDERAL DETENTION
FACILITY, *et al.*,

      Respondents.

**DECISION AND ORDER**

26-CV-00625-MAV

---

## INTRODUCTION

Petitioner Nisar Ahmed, a citizen of Afghanistan, is a civil immigration detainee who has been held at the Buffalo Federal Detention Facility ("BFDF") since January 17, 2025. ECF No. 1. On March 30, 2026, Petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. *Id.* Respondents filed an opposition to the petition, ECF No. 8, in response to the Court's Order to Show Cause, ECF No. 6. Petitioner filed a reply. ECF No. 10. For the reasons that follow, the petition is granted, and Respondents have 48 hours from the date of this Decision and Order to release Petitioner on appropriate conditions.

## BACKGROUND

Petitioner is a citizen of Afghanistan who entered the United States on January 17, 2025, without valid documentation and was apprehended by U.S. Border Patrol agents approximately three miles from the United States-Canadian border. ECF No. 1 at ¶ 12; *see* 8 U.S.C. § 1225(b)(1)(A)(iii). He has been detained by

Respondents ever since. ECF No. 1 at ¶ 2. On February 6, 2025, Petitioner was provided a credible fear interview, the asylum officer found he had a credible fear of persecution if returned to Afghanistan, and Petitioner was placed into removal proceedings under 8 U.S.C. § 1229a on February 10, 2025, with the issuance of a Notice to Appear. *Id.* at ¶ 13–14; ECF No. 8-1 at 2.

On June 20, 2025, an immigration judge ("IJ") ordered Petitioner removed to Afghanistan as the primary designated country, with Pakistan as the alternative. ECF No. 1 at ¶ 16. In doing so, the IJ denied Petitioner's applications for asylum, withholding of removal, and protection under the Convention Against Torture. *Id.* The removal order became administratively final on or about July 21, 2025, when the thirty-day appeal period expired. *Id.*; 8 U.S.C. § 1231(a)(1)(B); 8 C.F.R. § 1241(c). Accordingly, as of the date of this Decision and Order, Petitioner has been detained pursuant to 8 U.S.C. § 1231 for approximately one year and has been in Respondents' custody for more than 17 months.

Petitioner raises a number of claims in his petition for habeas relief, including that his continued post-removal-order detention is unlawful pursuant to *Zadvydas*. *See* ECF No. 1.

## LEGAL STANDARD

"A district court may grant a writ of habeas corpus [under 28 U.S.C. § 2241] when a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Kapoor v. DeMarco*, 132 F.4th 595, 606 (2d Cir.) (quoting 28 U.S.C. § 2241(c)(3)), *cert. denied*, 146 S. Ct. 325 (2025). In habeas proceedings under

§ 2241, "the petitioner . . . bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence." *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011).

## DISCUSSION

### I.    Jurisdiction

28 U.S.C. § 2241(c)(3) authorizes federal courts to grant habeas relief to prisoners or detainees who are "in custody in violation of the Constitution or laws or treaties of the United States." Federal courts retain jurisdiction under § 2241 to review purely legal statutory and constitutional claims regarding the government's detention authority, but jurisdiction does not extend to "discretionary judgment," "action," or "decision" by the Attorney General with respect to either detention or removal. *Da Cunha v. Freden*, No. 25-CV-6532-MAV, 2025 WL 3280575, at *1 (W.D.N.Y. Nov. 25, 2025), *aff'd sub nom. Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026) (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018)); *see Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) (holding that "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention" in immigration cases).

Respondents' arguments that 8 U.S.C. § 1252(b)(9) and 8 U.S.C. § 1252(g) deprive the Court of jurisdiction over this habeas matter, ECF No. 8-1 at 3–4, are unavailing. As the Supreme Court set forth, Petitioner here "do[es] not seek review of the Attorney General's exercise of discretion; rather, [he] challenge[s] the extent of

the Attorney General's authority under the post-removal-period detention statute. And the extent of that authority is not a matter of discretion." *Zadvydas*, 533 U.S. at 688 (distinguishing petitioners' habeas inquiry from a number of jurisdictional provisions of 8 U.S.C. § 1252, including subsection (g)); *Jennings*, 583 U.S. at 292–95 (rejecting a reading of § 1252(b)(9) that would have limited noncitizens to challenging their detentions only through petitions for review of their underlying removal orders in the court of appeals, stating that although "it [could] be argued that" such a challenge arose from the government's decision to remove the noncitizen "in the sense that if those actions had never been taken, the [noncitizens] would not be in custody at all," such an "expansive interpretation of § 1252(b)(9) would lead to staggering results" and that "[i]nterpreting 'arising from' in this extreme way would also make claims of prolonged detention effectively unreviewable."); *Sharifipour v. U.S. Dep't of Homeland Sec., et al.*, No. 26-CV-457-RCW, 2026 WL 1998824, at *3 (W.D.N.Y. July 10, 2026) (Wesley, J., Senior Circuit Judge sitting by designation) (the operative petition "raises only a single *Zadvydas* claim: a claim that the Government lacks the constitutional and statutory authority to detain him, not a challenge to the Government's execution of his removal order. It is clear that district courts have jurisdiction over such a claim." (collecting cases)).

## II.    *Zadvydas* Framework

Under the Immigration and Nationality Act, a noncitizen who is "ordered removed" must be detained during a 90-day "removal period." 8 U.S.C.

§§ 1231(a)(1)(A), (2)(A). Section 1231 defines the "removal period" as beginning "on the latest of" three dates:

> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal . . . , the date of the court's final order.
>
> (iii) If the [noncitizen] is detained or confined (except under an immigration process), the date the [noncitizen] is released from detention or confinement.

*Id.* at § 1231(a)(1)(B). Section 1231 also authorizes the government to detain certain individuals beyond the 90-day removal period. *See id.* at § 1231(a)(6). Those subject to further detention include noncitizens who are "removable as the result of . . . violations of criminal law" or else are "determined by the Attorney General to be a risk to the community[ ] or to be unlikely to comply with the order of removal." *Sharifipour,* 2026 WL 1998824, at *3 (quotation omitted); *see* 8 U.S.C. § 1231(a)(6).

Section 1231(a)(6) "places no explicit temporal limit on [the] detention" of those removable noncitizens who may be detained beyond the 90-day removal period. *Black v. Decker,* 103 F.4th 133, 143 n.13 (2d Cir. 2024), *cert. granted sub nom. Genalo v. Black,* No. 25-886, 2026 WL 1718025 (U.S. June 15, 2026). But in *Zadvydas,* the Supreme Court "read an implicit limitation into" § 1231(a)(6), holding that the section, "read in light of the Constitution's demands, limits [a noncitizen's] post-removal-period detention to a period reasonably necessary to bring about that [noncitizen's] removal from the United States." 533 U.S. at 689. The Court held that the statute did not "permit indefinite detention" and interpreting it to do so "would raise a serious constitutional problem" under the Fifth Amendment's Due Process

Clause—particularly because removal proceedings are "civil, not criminal." *Id.* at 689–90.

"Under *Zadvydas*, because noncitizens may be detained under section 1231(a)(6) for only the period necessary to allow the government to affect their removal, they may not be detained once removal is no longer 'reasonably foreseeable.'" *Sharifipour,* 2026 WL 1998824, at *4 (quoting *Zadvydas,* 533 U.S. at 699–700). "This 'reasonably foreseeable' standard governs both whether continued detention is statutorily authorized and whether it is constitutional." *Zheng v. Decker*, 618 F. App'x 26, 27 (2d Cir. 2015). "[F]or the sake of uniform administration in the federal courts," the Supreme Court held that a six-month period of detention was "presumptively reasonable." *Zadvydas,* 320 F.3d at 701. After the expiration of that period, if the noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden shifts to the government to "rebut" that showing with adequate "evidence." *Id.* "If the noncitizen satisfies that initial burden and the government cannot rebut it, 'the court should hold continued detention unreasonable and no longer authorized by statute.'" *Sharifipour,* 2026 WL 1998824, at *4 (quoting *Zadvydas,* 533 U.S. at 699–700).

As relevant to Petitioner's initial burden under *Zadvydas* after expiration of the presumptively reasonable detention period, "[i]n analyzing the likelihood of removal, courts consider a variety of factors, including the existence of a repatriation agreement with the target country, the target country's prior record of accepting removed aliens, and specific assurances from the target country regarding its

willingness to accept [a noncitizen]." *Lojo v. Garland*, No. 6:22-CV-06340 EAW, 2023 WL 2867791, at *4 (W.D.N.Y. Apr. 10, 2023) (quotation omitted). Further, what constitutes the 'reasonably foreseeable future' will depend on the length of detention. *Id.*; *see Zadvydas*, 533 U.S. at 701 ("[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink.").

There is no argument that the petition was filed prematurely, *see* ECF No. 8, therefore the salient issue is whether Petitioner's removability is reasonably foreseeable.

### A. Petitioner Has Satisfied His Initial Burden

As explained above, to meet the initial burden under *Zadvydas*, a petitioner must "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." 533 U.S. at 701. That requires the petitioner to "present more than 'mere assertions that removal is unforeseeable.'" *See Callender v. Shanahan*, 281 F. Supp. 3d 428, 434 (S.D.N.Y. 2017) (quoting *Juma v. Mukasey*, No. 09-CV-3122, 2009 WL 2191247, at *3 (S.D.N.Y. July 23, 2009)). Nonetheless, the "good reason to believe" standard is "not a very high bar." *Dong v. Charles*, No. 26-CV-85, 2026 WL 1473790, at *5 (W.D.N.Y. May 26, 2026) (quotation omitted). A petitioner does not need to conclusively demonstrate that there is "no reasonably foreseeable, significant likelihood of removal or show that his detention is indefinite"; "something less" is enough. *Senor v. Barr*, 401 F. Supp. 3d 420, 430 (W.D.N.Y. 2019) (quotation omitted).

Here, Petitioner has been detained pursuant to § 1231 for approximately one year and is no closer to being removed than he was a year ago. He has provided ICE with his Afghan passport, his Afghan national ID, and all other documents ICE has requested of him. ECF No. 1 at ¶ 22. Immigration and Customs Enforcement ("ICE") has made one "request" for a "travel letter" on Petitioner's behalf—in September 2025. ECF No. 8-2 at ¶ 10. Travel documents have still not been issued, which is unsurprising given the following climate. As Petitioner highlights, the Taliban has controlled the government of Afghanistan and all border crossings since August 2021; the United States does not recognize the Taliban as the government of Afghanistan; the U.S. Embassy in Kabul has been closed since August 31, 2021; the "Afghanistan Affairs Unit" has been relocated to Doha, Qatar, since February 2022; and there are no regular ICE removal flights to Afghanistan. ECF No. 1 at ¶ 25; ECF No. 10 at 10–11.

Petitioner aptly describes the circumstances: "[t]hus, ICE's alleged travel-letter request made 'in or about September 2025,' was sent to a Taliban diplomatic mission that the U.S. government does not recognize[,] by a U.S. government office located in neither the U.S. nor Afghanistan." ECF No. 10 at 10–11 (quoting ECF No. 8-2 at ¶ 10). Respondents have no update on this ten-month old travel letter request except to say they are "currently working to obtain a travel letter from the government of Afghanistan." ECF No. 8-1 at 6. Further, in February 2026, as part of

8

a post-order custody review, Respondents themselves classified Petitioner's detention as "unresolvable long-term detention."[1] ECF No. 1 at ¶ 22.

With respect to Pakistan, Petitioner's alternative country of removal, the record is devoid of any evidence that Respondents have attempted to remove Petitioner to Pakistan, Pakistan has expelled over 950,000 citizens of Afghanistan since September 2023, and Pakistan is not party to the 1951 Refugee Convention and has no domestic refugee protection law. ECF No. 1 at ¶ 26; ECF No. 10 at 11.

In short, absent a single, still pending, "request" for a travel letter in September 2025 to a government that the United States does not recognize, no steps have been taken to remove Petitioner from the United States since his June 2025 removal order. "[C]ourts have held that a showing that the government failed to make *any* progress in deporting a detainee since it 'first took him into custody'—combined with 'the passage of time'—is 'sufficient to meet [the petitioner's] initial burden." *Sharifipour,* 2026 WL 1998824, at *6 (quoting *Senor,* 401 F. Supp. 3d at 430). The circumstances here certainly fit that description and are amplified by the impediments posed by Afghanistan and Pakistan being the identified targets for removal. *See, e.g., id.* (holding petitioner, a citizen of Afghanistan, had satisfied his initial burden under *Zadvydas* by pointing "not just to the passage of time but to the Government's own actions and representations over the years showing that it is unable to remove him" to Afghanistan); *Wazir v. Att'y Gen. of U.S.,* No. 3:26cv526, 2026 WL 1122610, at *3 (M.D. Pa. Apr. 24, 2026) (holding petitioner, a citizen of

---

[1] Capitalization omitted.

Afghanistan, had satisfied his initial burden under *Zadvydas* because "[a]ny effort to remove Wazir to Afghanistan runs through the Taliban. There are no diplomatic relations between the United States and the present theocratic regime controlling Afghanistan[,]" and, although Wazir wished to return to Afghanistan, he argued "removal to his home country was futile under such circumstances"); *Yunsai v. Bondi*, No. SA-26-CA-00129-XR, 2026 WL 895627, at *2 (W.D. Tex. Mar. 30, 2026) (holding petitioner, a citizen of Afghanistan, had satisfied his initial burden under *Zadvydas* because of "[t]he combination of these heightened administrative requirements [between the United States and Afghanistan] and a diplomatic impediment to meeting them"); *Jalili v. Semaia*, No. 5:26-cv-01703-MBK, 2026 WL 1084739, at *3 (C.D. Cali. Apr. 16, 2026) (holding petitioner, a citizen of Afghanistan, had satisfied his initial burden under *Zadvydas* because "[t]here is no current system for removing Afghan nationals back to Afghanistan[] given that the United States does not recognize the Taliban government," and "[s]ince Petititoner's detention [of approximately eight months], the Government has not taken any concrete steps to secure travel documents to effectuate Mr. Jalili's removal to a third country, much less identify a country to which he can be lawfully removed or that would accept him."); *Qasemi v. English*, No. 3;26cv170 DRL-SJF, 2026 WL 2066145, at *1, *4 (N.D. Ind. July 17, 2026) (holding petitioner, a citizen of Afghanistan, had satisfied his initial burden under *Zadvydas* because, *inter alia*, there is no diplomatic relationship or repatriation agreement between the United States and Afghanistan, there is no Afghan consulate in the United States, Respondents had more than a year and half

since the government of Afghanistan changed the requirements for a travel document in January 2025, "and no request was made," and, regarding a purported "formal request for submission to Afghan officials," the government could not provide any update after three months on whether than request was "submitted or any timeline . . . about when that request might be considered or approved.").

Petitioner has plainly satisfied his burden of demonstrating good reason to believe that there is no significant likelihood of removal in the foreseeable future.

### B. Respondents Have Failed to Rebut Petitioner's Showing

The burden therefore shifts to Respondents to "rebut" Petitioner's showing. As noted, Respondents' position is that they "have been providing Petitioner with Post Order Custody Reviews and [are] currently working to obtain a travel letter from the government of Afghanistan." ECF No. 8-1 at 6. As of April 2026, the only details Respondents provided to demonstrate their "current[] work[]" to remove Petitioner were:

> ICE is working on removing Petitioner to Afghanistan. Afghanistan currently requires a travel letter to be issued before accepting the return of its citizens. In or about September 2025, a request for a travel letter for Petitioner was made to the Embassy of the Islamic Emirates of Afghanistan in Doha, Qatar.

ECF No. 8-2 at ¶ 10. Respondents have not offered any updates since April 2026 and have not set forth any concrete actions that they have taken since September 2025— approximately 10 months ago. Nor have they attempted to, for example, offer any details about what is causing the delay in obtaining Petitioner's specific travel document, when and how it may be remedied, or attempted to address or clarify any

11

of the notable administrative and diplomatic issues with removing noncitizens generally to Afghanistan (or Pakistan) that were raised by Petitioner.

The government's evidence is insufficient to meet its burden of demonstrating a likelihood of removal in the reasonably foreseeable future. *See, e.g., Sharifipour,* 2026 WL 1998824, at *6 (holding evidence that "Afghanistan currently requires a travel letter to be issued before accepting the return of its citizens," and that "ICE is working to obtain a transportation letter that would allow for [p]etitioner's removal to Afghanistan" was insufficient to rebut Afghan petitioner's showing where government provided "no details about the process of obtaining 'transportation letters' from Afghanistan, what other steps are required, any particular efforts it has made or intends to make in Sharifipour's case, or the likelihood of success of any such measures."); *Yunsai,* 2026 WL 895627, at *3 (holding evidence that ICE is "making regular efforts" to obtain necessary travel documents, the "Afghanistan embassy has not declined to issue a travel document," and, besides the travel document, there was no record of another impediment to removal was insufficient to rebut Afghan petitioner's showing); *Wazir,* 2026 WL 1122610, at *3 (holding evidence that, *inter alia,* petitioner had been interviewed by the Afghanistan consulate and was on a list indicating his need for a travel letter was insufficient to rebut Afghan petitioner's showing where the travel letter had been pending for over six months, there were no other facts specific to petitioner's intended removal, and there was "no explanation from the government why [the alternative removal country of Pakistan] ha[d] not been explored ten months from the final removal order in this case."); *see also*

*Escalante v. Noem*, No. 25-CV-182, 2025 WL 2206113, at *4 (E.D. Tex. Aug. 2, 2025) (stating the respondents' "conclusory statements that they are taking steps to remove [p]etitioner" were not sufficient to rebut his showing under *Zadvydas*).

### C. The Appropriate Remedy is Release

As the Supreme Court stated, "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." *Zadvydas*, 533 U.S. at 699–700. Accordingly here, Petitioner's detention is unlawful as no longer authorized by 8 U.S.C. § 1231, and he must be released. *See, e.g., Sharifipour*, 2026 WL 1998824, at *7 (ordering immediate release of Afghan petitioner under *Zadvydas*); *Wazir*, 2026 WL 1122610, at *3 (same); *Yunsai*, 2026 WL 895627, at *3 (same); *Jalili*, 2026 WL 1084739, at *4 (same); *Qasemi*, 2026 WL 2066145, at *4 (same).

The noncitizen's release "may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances." *Zadvydas*, 533 U.S. at 700 (noting the noncitizen may "no doubt" be returned to custody for violating a condition of release); *see* 8 U.S.C. 1231(a)(3); 8 C.F.R. §§ 241.4, 241.5. Respondents shall release Petitioner within 48 hours of this Decision and Order pursuant to appropriate terms of supervision.

### CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus, ECF No. 1, is GRANTED, and Respondents shall release Petitioner from custody subject to

appropriate conditions. In light of this disposition, the Court declines to reach Petitioner's other claims for habeas relief.

## ORDER

IT IS HEREBY ORDERED that the petition for writ of habeas corpus, ECF No. 1, is GRANTED; and it is further

ORDERED that Respondents shall RELEASE Petitioner from custody within 48 hours of this Decision and Order on appropriate conditions of supervision; and it is further

ORDEREED that Respondents shall file a status report on or before July 30, 2026, certifying compliance with this Decision and Order; and it is further

ORDERED that the Clerk of Court shall enter judgment in favor of Petitioner and close this case.

SO ORDERED.

Dated:    July 27, 2026
          Rochester, New York


                                        _____
                                        HON. MEREDITH A. VACCA
                                        UNITED STATES DISTRICT JUDGE

14